# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK ABROR, | : | |
| | : | 1:17-cv-02221 |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY OFFICE OF VOCATIONAL REHABILITATION, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM**

## **June 28, 2019**

In the instant case, Plaintiff alleges that he was discriminated and retaliated against by his former employer and that he was constructively discharged. Presently pending before the Court is Defendant's motion for summary judgment, (Doc. 18), seeking summary judgment as to all counts in Plaintiff's complaint. The matter has been fully briefed, (Docs. 23, 24, 25), and is ripe for disposition. For the reasons that follow, Defendant's motion shall be granted.

### I.  BACKGROUND

Frank Abror ("Plaintiff" or "Abror") was employed by the Pennsylvania Department of Labor and Industry ("Defendant" or "Department") from January

1

1997 until his retirement on October 21, 2016. (Doc. 20-1 at 18:10–14). Plaintiff is African American, visually impaired, and hearing impaired. (Doc. 24 at 9). From his hire until 2009, Plaintiff was subject to only minimal discipline, including counseling, an oral reprimand, a written reprimand, and a one-day suspension without pay. (Doc 20-1 at 22:5–14). The one-day suspension, however, was eventually appealed and overturned. (*Id*. at 22:8–18; *Id*. at 13:10–12).

Relevant to the instant motion, at the Department, disciplinary action begins with counseling. In the event counseling is ineffective, a supervisor is entitled to escalate the matter using oral reprimands, written reprimands, suspensions of one, two, or three days without pay, and, if all else fails, termination. (*Id*. at 36:13–37:6). To be clear, however, neither counseling, nor oral reprimands, nor written reprimands impact an employee's pay or benefits. (*Id*. at 37:7–38:8).

Notwithstanding his disciplinary history, in May 2009, Plaintiff was promoted to Vocational Rehabilitation Supervisor. (*Id.* at 30:14–18). In an employee review filed on December 22, 2014, Plaintiff received all satisfactory ratings.[1] (Doc. 20-2, Exh. 2).

---

[1] Plaintiff's supervisor stated that there was an employee review from October 15, 2015, that was below satisfactory, however, the supervisor noted that this review was appealed and removed from Plaintiff's personnel file. The review's ratings and comments are unknown as it has not been provided to the Court. (Doc. 20-7 at 107:1–17).

In January 2016, Plaintiff visited the emergency room where he was diagnosed with "stressful workplace environment," and subsequently informed the Department of his diagnosis. (Doc. 20-1 at 119:17–120:24). Nonetheless, in February 2016, Plaintiff alleges that he was temporarily assigned an increased caseload as a "placeholder" for cases supervised by recently-retired workers. (Doc. 20-7 at 51:1–18).

In an employee review for the period of December 22, 2015 through March 21, 2016, Plaintiff received six "unsatisfactory" ratings and two "needs improvement" ratings. (Doc. 20-3). In an employee review from March 22, 2016 through June 21, 2016, Plaintiff received six "unsatisfactory" ratings and two "needs improvement" ratings. (Doc. 20-4). Plaintiff's supervisor, Nicole Wade ("Wade"), clarified in these reviews that Plaintiff was not finishing assignments, was not attending meetings, and was sleeping during meetings. (Doc. 20-7 at 81:4–13).

On February 9, 2016, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination.[2] (Doc. 1 at 14). Defendant received the complaint on February 24, 2016. (*Id*. at ¶ 34).

---

[2] The exact allegations in the complaint are unknown because the filing was not presented to the Court.

On April 19, 2016, Plaintiff received an oral reprimand from Wade for failing to complete assignments. (Doc. 20-5). Notwithstanding his inability to maintain his current workload, Plaintiff contends that Wade assigned him even more work and instructed him to personally call all of the Department's clients in a certain region to check in with them—a significant task. (Doc. 20-7 at 53: 13–19).

On July 26, 2016, Plaintiff attended a fact-finding meeting to discuss with Wade his failure to complete assignments. (Doc. 20-1 at 44:19–24). At the meeting, Plaintiff stated that he did not have the necessary updated equipment to accommodate his disabilities and that, as a result, he was overloaded with assignments. (*Id.* at 44:19–46:9). On August 24, 2016, Plaintiff received a written reprimand for failure to complete assignments, which was included in his personnel file. (Doc. 20-6). According to Plaintiff, when he was presented with his reprimand, he cried. (Doc. 20-1 at 47:20–48:5).

On September 30, 2016, Wade sent an email to Elizabeth Yarnell[3] stating that she had spoken with Plaintiff about office safety, particularly his use of his white cane in the office. (Doc. 24-1).

On October 6, 2016, Plaintiff sent an unsolicited email to Adrienne Kuhn[4] stating:

---

[3] Yarnell's official position at the Department is unknown.

[4] Kuhn's official position at the Department is unknown.

> I am proud to announce my twenty years of service to the Commonwealth. I am very excited my long AWAITED twenty (20) years of service is here which qualifies me to retire with health benefits. I would therefore like to notify you of separation of my employment from the Commonwealth effective October 22, 2016. My last day of work therefore is Friday, October 21, 2016.

(Doc. 20-8) (capitalization in original).

On December 4, 2017, Plaintiff filed a complaint in this Court. (Doc. 1). In Counts I and II, Plaintiff alleges racial discrimination under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA"). (*Id*. at ¶ 14–29). Plaintiff alleges that he was discriminated against and treated differently than similarly situated colleagues as a result of his race and that this difference in treatment resulted in loss of future pay, loss of career opportunities, and other damages. (*Id*. at ¶ 24). In Counts III and IV, Plaintiff alleges that he was unlawfully retaliated against in violation of Title VII and the PHRA. (*Id*. at ¶ 31–47). Plaintiff avers that his increased workload, his unsatisfactory reviews, and his written and oral reprimands were retaliation for filing his PHRC and EEOC complaint. (*Id*. at ¶ 33–40). In Count V, Plaintiff alleges that Defendant's actions amounted to a constructive discharge in violation of the PHRA. (*Id*. at ¶57–58). Plaintiff alleges that his increase in workload as well as Wade's reprimands, unsatisfactory reviews, request that he use his white cane, and refusal to update his adaptive computer to accommodate his disability left him no choice but to resign.

(*Id*. at ¶ 51–57).  Defendant filed an answer on February 16, 2018 denying Plaintiff's allegations. (Doc. 9 at ¶ 16–60).

On February 1, 2019, Defendant filed a motion for summary judgment, (Doc. 18), and a brief in support thereof on February 15, 2019.  (Doc. 23). The matter has now been fully briefed, (Docs. 23, 24, 25), and is ripe for disposition. For the reasons that follow, Defendant's motion shall be granted.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1). A plaintiff that fails to dispute a genuine issue of material fact as to any of the elements of his or her *prima facie* case has not met his or her initial burden and summary judgment is properly granted for the defendant. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III. DISCUSSION

In the instant case, Defendant seeks summary judgment as to all of Plaintiff's claims, contending that Plaintiff has failed to make out a *prima facie* case of discrimination, retaliation, or constructive discharge. Because Plaintiff relies upon his constructive discharge as one of the adverse employment actions upon which his discrimination and retaliation claims are based, we first review Defendant's motion for summary judgment as to constructive discharge. We then review Defendant's remaining arguments *seriatim*.

### a. Count V – Constructive Discharge

In his complaint, Plaintiff alleges that he was constructively discharged. Specifically, Plaintiff argues that his poor performance evaluations and reprimands, his continuously increasing work-load, and his supervisor's continued increase of his workload even after acknowledging that he was unable to maintain his current pace made his working conditions intolerable which forced him "to prematurely retire from his employment." (Doc. 24 at 17–18; Doc. 1 at ¶ 57). Plaintiff reasons, "[w]ould an employer give a non-performing employee more work if not for the sole reason to force his/her resignation?" (*Id*. at 17–18). In further support of his claim that he had no choice but to resign, Plaintiff cites Wade's comments regarding his cane and Wade's continued threats to impose discipline if Plaintiff did not show improvement. (*Id*. at 18).

In its motion and accompanying brief, Defendant argues that Plaintiff's constructive discharge is wholly meritless, and that Defendant is entitled to summary judgment as a matter of law. According to Defendant, Plaintiff was not threatened with termination, was not told to resign, was not demoted, and did not have his pay or benefits reduced. (Doc. 23 at 18–20). Likewise, Defendant argues, any increase in workload Plaintiff faced did not materially alter his role because that extra work was temporary, (*id.* at 20), and Plaintiff's unsatisfactory reviews were the result of poor performance. (*Id.* at 20–21). In short, Defendant concludes, a reasonable person would not have felt compelled to resign under such circumstances. (*Id.* at 21). We agree.

In order to succeed on a constructive discharge claim, a plaintiff must show that his or her "working conditions [were] so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Goss v. Exxon Office Sys. Co.*, 747 F. 2d 885, 887–88 (3d Cir. 1984). A plaintiff must show that his or her working conditions were "intolerable." *Connors v. Chrysler Financial Corp.* 160 F.3d 971, 976 (3d. Cir. 1998).

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choice as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign . . . rather, intolerability is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign,"—that is, whether he would have had no choice but to resign.

9

*Id*. (internal citations omitted).[5]

Ordinarily, Courts have found constructive discharge when an employee faces the following conditions: (1) threats or suggestions that the employee retire, (2) demotions, (3) reduction in pay or benefits, (4) transfer to a less desirable position, (5) altering job responsibilities, and/or (6) unsatisfactory performance reviews. *Cowell v. Rite Aid Corp.*, 602 F.3d 495, 502–03 (3d Cir. 2010) (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)). Increasing workload is not sufficient, in and of itself, to yield a constructive discharge. *Duffy v. Paper Magic Group*, 265 F.3d 163, 169 (3d Cir. 2001) (finding no constructive discharge when short-staffed department yielded increased workload for plaintiff resulting in frustration). Indeed, the court in *Duffy* noted that, "a stressful environment does not amount to constructive discharge." *Id.* at 170 (finding no constructive discharge based upon increased workload coupled with disappointment and stress as a result of workplace exclusion from committees, hiring decisions, and staff meetings). Likewise, the Third Circuit has held that being subjected to "overzealous" supervision is not enough for an employee to claim constructive discharge. *Clowes*, 991 F.2d at 1162; *but see Boandl v.*

---

[5] We note that, although *Connors* involved the Age Discrimination in Employment Act and not Title VII, it is well-settled that constructive discharge claims under the ADEA can be used to analyze constructive discharge claims under Title VII and the PHRA. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070 n.5 (3d. Cir. 1996) ("[T]he doctrine of constructive discharge is the same in all employee discrimination claims such as those under the ADEA.").

*Geithner*, 752 F. Supp. 2d 540, 574 (E.D. Pa. 2010) (finding negative evaluations, threats of termination if performance did not improve, and removal from beneficial programs met three of six *Cloves* factors and sufficient for constructive discharge).

Taking all factual allegations in the light most favorable to the non-moving party—as we must—we consider the following circumstances presented by Plaintiff in support of his constructive discharge: (1) Plaintiff's workload was increased despite his failure to complete previous assignments; (2) Plaintiff received unsatisfactory performance reviews; (3) Plaintiff felt pressure, anxiety, and stress based on his performance reviews; (4) Plaintiff's supervisor required him to use his white cane in the office; (5) Plaintiff cried; (6) Plaintiff was told that discipline may follow if he failed to complete his work; (7) Plaintiff was the only person supervised by Wade who was told that failure to complete an assignment may result in discipline; and (8) Plaintiff's adaptive computer was not updated. (Doc. 24 at 16–19). Even construing the aforestated in the light most favorable to the non-moving party, we find that a reasonable person in Plaintiff's position would not have felt as if he or she had no choice but to resign.

The test for constructive discharge, as noted above, is objective and does not account for Plaintiff's feelings of anxiety or his crying. In our view, an increased workload, poor performance reviews, lack of updated equipment, and facing disciplinary action for failure to complete assignments is not so intolerable that a

11

reasonable person would feel his or her only option was to resign. *See Connors*, 160 F.3d at 976. Rather, these circumstances amount to ordinary work experiences for millions of average citizens. An increased workload, especially after non-completion of past assignments, is likely frustrating and stressful, however, being frustrated and stressed is simply not enough to compel a constructive discharge. *See Duffy*, 265 F.3d at 170.

We are also unconvinced that Wade's comments concerning Plaintiff's use of his cane would compel a reasonable person to resign. Although it may be true that Plaintiff, or even a reasonable person, could have felt uncomfortable or even that it was his or her *best* option to resign, such a statement, even when viewed under the totality of the circumstances, is not so intolerable that a reasonable person would feel that his or her *only* option was to resign. *See Connors*, 160 F.3d at 976. Accordingly, Plaintiff has failed to state a *prima facie* case of constructive discharge and we shall grant Defendant summary judgment as to Count V.

### b. Counts I and II – Discrimination

Defendant also argues that Plaintiff has failed to demonstrate a *prima facie* case of racial discrimination as outlined in Counts I and II.[6] (Doc. 23 at 5). A finding of discrimination under Title VII and the PHRA is warranted when a

---

[6] PHRA claims and Title VII discrimination claims can be interpreted together and are treated co-extensively. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d. Cir. 1996).

12

plaintiff demonstrates: (1) that he or she belongs to a protected class; (2) that he or she suffered an adverse employment action; and (3) that said action occurred under circumstances leading to an inference of unlawful discrimination. *Page v. Trs. Of the Univ. of Pa.*, 222 Fed. Appx. 144, 145 (3d Cir. 2007) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999)). In the instant case, Defendant argues, Plaintiff suffered no adverse employment action and has thus failed to make out a *prima facie* case of discrimination. (Doc. 23 at 6). Defendant reasons that Plaintiff had a history of unsatisfactory performance, beginning with his review on March 21, 2016, that he was disciplined following the normal departmental procedure, and that this disciplinary process had no impact on his pay or benefits. (*Id.* at 6–7). Accordingly, Defendant concludes, this discipline could not amount to an adverse employment action and Plaintiff's discrimination claim premised thereon necessarily fails. (*Id.* at 7).

In response, Plaintiff argues that the disciplinary action he faced amounted to an adverse employment action because having that discipline on his permanent record could prevent him from being promoted, which could in turn impact his future pay. (Doc. 24 at 9). Furthermore, Plaintiff argues, even if the discipline he faced is not an adverse employment action in and of itself, the fact that he was later constructively discharged certainly constitutes an adverse action that impacted his pay and benefits. (*Id.* at 9 (citing *Bryant v. Wilkes-Barre Hospital Company, LLC*,

13

146 F. Supp. 3d 628, 651 (M.D. Pa. 2015))). Thus, Plaintiff concludes, Defendant's motion for summary judgment must be denied. We disagree.

An adverse employment action includes, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In short, an adverse employment action only amounts to such when the action has a tangible impact on the employee's employment. *Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005) (internal citations omitted). To be a legally actionable adverse employment action, a reasonable employee must find the actions to be sufficiently adverse. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Termination, or other actions which have a negative impact on pay, are generally considered to be adverse. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999) (finding that transferring employee to less desirable and more challenging school is adverse); *see also, e.g.*, *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997) (holding that discriminatory failure to promote is adverse); *Zielinski v. Kimberly-Clark Corp.*, 2016 WL 3519709 *11 (E.D. Pa. 2016) (holding that unsatisfactory performance reviews and implementation of performance plan were adverse because they resulted in loss of

automatic pay raise); *Elston v. UPMC – Presbyterian Shadyside*, 2007 WL 3120291 *31 (W.D. Pa. 2007) (holding that termination is adverse).

The converse of the above is also true. An employment action is not adverse when it has no impact on an employee's pay, work status, or work duties. *See Robinson*, 120 F.3d at 1300 (finding that "unsubstantiated oral reprimands…[and]… unnecessary derogatory comments" are not adverse); *Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005) (failing to raise salary not adverse, as long as pay is not decreased); *Williams v. Pennsylvania State Police – Bureau of Liquor Control Enforcement*, 108 F. Supp. 2d 460, 466 (E.D. Pa. 2000) (holding that a formal complaint filed against employee was not adverse because it did not result in discipline or administrative proceedings). Likewise, negative performance reviews are typically not adverse, unless they alter material elements of the employee's job, such as pay grade, responsibilities, or employment status. *See Turner*, 421 F.3d at 696 ("[A] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment."); *but see Robinson*, 120 F.3d at 1298 (noting in *dicta* that, "[f]ormal reprimands that result in a notation in an employee's personnel file could be sufficiently concrete, but harsh words that lack real consequences are not.").

First, because we have found that Plaintiff was not constructively discharged, we review only Plaintiff's other proposed adverse employments actions. In this case, it is undisputed that Plaintiff received several unsatisfactory reviews, one verbal reprimand, and one written reprimand. Plaintiff argues that these actions are adverse because he could be denied future promotions. We disagree. Rather, we find that the impact of these reviews and reprimands are too speculative to determine them to be sufficiently adverse to sustain Plaintiff's racial discrimination claim on their own. *See Ellerth*, 524 U.S. at 761 (finding that adverse employment action must include a "significant change"); *see also Turner*, 421 F.3d at 696 (noting that an employment action is adverse when it has a tangible impact on employment).

Plaintiff offers no case law supporting his proposition that a speculative impact on his future ability to obtain a promotion is sufficiently tangible and significant to qualify as an adverse employment action. Indeed, in Plaintiff's deposition, he admitted that he received oral and written reprimands before his promotion in 2009 and that he was promoted anyway. (Doc. 20-1 at 22:9–19; *Id.* at 30:14–18). Plaintiff has pointed to no evidence that his pay was decreased or that his job was materially altered as a result of his negative reviews and reprimands. We therefore hold that the reprimands and reviews to which Plaintiff cites are insufficiently adverse to sustain his employment discrimination claim, that Plaintiff

has thus failed to support a *prima facie* case of discrimination under Title VII or the PHRA, and that Defendants are entitled to summary judgment as a matter of law as to Count I and II.

### c. Counts III and IV – Retaliation

In order to make out a *prima facie* claim of retaliation, a plaintiff must show that (1) he or she engaged in activity protected by Title VII; (2) that the employer took an adverse employment action against him or her; and (3) that there was a causal connection between the employee's participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d. Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d. Cir. 1995)).

As with Counts I and II, Defendant argues that Plaintiff has not established a *prime facie* case of retaliation in Counts III and IV because he has failed to demonstrate that he suffered an adverse employment action. (Doc. 23 at 9–13). Defendant also contends that Plaintiff has failed to demonstrate a causal connection between his protected activity and the adverse action alleged. (*Id.* at 13–14). Specifically, Defendant argues, Plaintiff has not shown that the various forms of discipline he faced or his resignation were more than temporally connected with his filing of his EEOC/PHRA complaint. (*Id.*).

As with Counts I and II, Plaintiff points to his increased workload, his unsatisfactory performance reviews, his reprimands, and the threats of disciplinary action he faced as adverse employment actions taken by Defendant sufficient to sustain his retaliation claims. (Doc. 24 at 14). Because Plaintiff contends that these adverse actions began after he went to the emergency room for work-related stress, after filing the PHRC complaint, and after appealing his first negative performance review, the clear temporal proximity between the adverse actions and the protected activity are sufficient to sustain his claim. (*Id*. at 13–14). As before, we disagree.

Setting aside Plaintiff's temporal proximity argument, as with Counts I and II, we find that Plaintiff has failed to demonstrate that the adverse employment actions he faced were sufficiently adverse to sustain his retaliation claims under Title VII and the PHRA. Plaintiff offers no new arguments or case law supporting the contention that these actions are sufficiently adverse. Thus, for the same reasons as above, we find that these actions are too intangible or speculative to be adverse. As with Counts I and II, because we found no constructive discharge occurred in this case, Plaintiff cannot sustain his retaliation claims on that basis either. Accordingly, we shall grant summary judgment for Defendant as to Counts III and IV.

## IV. CONCLUSION

For the foregoing reasons, we shall grant Defendant's Motion for Summary Judgment, (Doc. 18), on all counts. A separate order shall issue.